UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| JOSEPH HOFFLER<br>1985 Center Hill Hwy<br>Hertford, NC 27944<br><br>*Plaintiff*,<br><br>v.<br><br>FRANK KENDALL III,<br>*in his official capacity only, as*<br>Secretary of the Air Force<br>Department of the Air Force<br>1670 Air Force Pentagon<br>Washington, DC 20330-1670<br><br>*Defendant*. | Case No. |

## COMPLAINT IN A CIVIL CASE

Plaintiff Joseph Hoffler, Lieutenant Colonel, U.S. Air Force (Ret.) (hereinafter "Plaintiff" or "Lt Col Hoffler"), by and through undersigned counsel, respectfully brings this civil action against Defendant Frank Kendall III ("Defendant"), in his official capacity as U.S. Secretary of the Air Force. Plaintiff asks the Court to hold that Defendant, through the Air Force Board for Correction of Military Records ("AFBCMR"), has, in a manner arbitrary, capricious, and unsupported by evidence, denied Plaintiff's reconsideration of his application to correct his military record, and that such denial is unlawful under the Administrative Procedure Act ("APA"). As grounds therefore, Plaintiff alleges:

## INTRODUCTION

The Air Force has a documented history of racial disparity in military justice matters, and there are strong suspicions of racial disparity in how and when administrative discipline is administered. Although the Air Force is finally recognizing the existence of these issues, the

1

AFBCMR's decision in this case makes clear that the Air Force still has quite a ways to go in rectifying the issues.

## PARTIES

1. Lt Col Hoffler served in the U.S. Air Force from 1962 until racism within the U.S. Air Force pushed him to retire early but honorably as a Lieutenant Colonel in 1984.

2. Defendant is Secretary of the Air Force and is named in his official capacity only as the head of the U.S. Air Force. *See* 10 U.S.C. § 9013(a)(1).

## JURISDICTION AND VENUE

3. These claims are brought under the APA. Therefore, this Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 704.

4. Venue in this District is proper pursuant to 28 U.S.C. § 1391(e)(1) and 5 U.S.C. § 703.

## STATEMENT OF FACTS

5. Plaintiff was the victim of institutionalized racism in the Air Force throughout the 1960s, 1970s, and 1980s. His final supervisor targeted him specifically because of his race, which ultimately caused Lt Col Hoffler to retire earlier than he wanted to.

6. After enlisting in the Air Force in 1962, Lt Col Hoffler decided to make the Air Force his career. He attended Officer Training School, graduated, was commissioned, and rose through the ranks.

7. In 1978, Lt Col Hoffler, then a Major, led a Security Police Squadron that was named "Best Security Police Squadron in the Air Force." In 1979, Lt Col Hoffler was promoted, based on his outstanding performance, to commander of the 7625th Security Police Squadron. This made him the first black squadron commander at the Air Force Academy.

8. Lt Col Hoffler was one of the few black officers in the Air Force at that time, and the racist atmosphere within the Air Force made him justifiably uncomfortable. For example, if he would go to an Officer's Club, he would frequently be the only black man there. The rest of the officers were white and would look at him as if he did not belong among them.

9. Despite these difficulties, Lt Col Hoffler kept his head down, worked hard, and did his best to care for his troops and lead by example. As a result of this dogged dedication, in December 1983, he was told by his career advisor that he was "looking good" for promotion to Colonel.

10. Lt Col Hoffler was scheduled for a routine transfer just prior to the promotion board results, so his career advisor suggested that Lt Col Hoffler ask for an extension to his current tour of duty to await those results. Lt Col Hoffler asked his chief of staff for an extension, but the chief of staff was on leave and did not see the request until his return. Upon his return in early January 1984, he informed Lt Col Hoffler that he was leaving and a new chief of staff, Colonel Melville ("Col Melville"), would review the request.

11. Col Melville became the reason that Lt Col Hoffler prematurely retired. Col Melville was a white Mormon, and a bishop with the Church of Latter-Day Saints. One of that faith's teachings (at least at the time) was that blacks were "cursed with dark skin." Lt Col Hoffler believed that Col Melville was racist, and that Col Melville focused his racist energies on Lt Col Hoffler in an effort to drive him out of the Air Force. Indeed, at one Elder meeting of his church, Col Melville is reported to have said, "As long as I am at the Air Force Academy, Lt Col Joseph Hoffler will not get promoted."

12. Col Melville reviewed Lt Col Hoffler's request to stay at his current tour of duty pending the promotion board results. He denied it. Lt Col Hoffler believed this was a harbinger

of bad things to come against him from Col Melville, so in late January 1984, he submitted his retirement papers. Lt Col Hoffler always intended to pull them back and continue in the Air Force, but Col Melville put into motion actions that made that goal impossible. Col Melville initiated an internal investigation against Lt Col Hoffler a mere ten days after officially becoming Lt Col Hoffler's direct supervisor.

13. The internal investigation against Lt Col Hoffler was initiated by Col Melville to "dig up dirt" on Lt Col Hoffler by "harassing members of his squadron and asking them" if they knew of any derogatory information on Lt Col Hoffler. Favorable witnesses were excluded, and when the First Sergeant of Lt Col Hoffler's squadron wrote to Lieutenant General Scott, who was then the Superintendent of the Air Force Academy, expressing concern about the biased investigation, Col Melville intercepted the letter, and that First Sergeant was called into Col Melville's office, reprimanded for writing the letter, and called a "stupid sergeant." Unsurprisingly, due to the obvious bias in the investigation, Col Melville issued a Letter of Reprimand ("LOR") against Lt Col Hoffler in April 1984.

14. The actions alleged in the LOR were absurd in their obvious falsity: that Lt Col Hoffler engaged in gambling activities with his unit. That Lt Col Hoffler engaged in fraud, waste, and abuse by taking a piece of plexiglass for his personal use. (He was provided an otherwise unusable scrap that he was going to make into coasters for his office. He returned the scrap when challenged about it. Hardly fraud, waste, and abuse.) And that Lt Col Hoffler threatened another Airman with discharge for participating in the investigation. All were untrue. But due to the administrative nature of the LOR, and the un-checked "discretion" afforded Col Melville in issuing this adverse document, Lt Col Hoffler's chances of promotion were destroyed, while Col Melville's racist animus and actions remained undetected.

15. Col Melville was an experienced personnel Officer who knew the ins and outs of Air Force procedure; indeed, he had previously been the Air Force Academy's Director of Personnel. Considering his extensive background in Air Force personnel matters, upon information and belief, Col Melville knew of the detrimental effects an LOR has on an Officer's career, and that it came with none of the due process protections afforded an Officer faced with a court-martial or even non-judicial punishment under Article 15, Uniform Code of Military Justice. Col Melville's singular targeting of Lt Col Hoffler because of his race, and his issuance of a career-ending LOR against Lt Col Hoffler, had the consequence and import of an Article 15 proceeding or a court-martial, yet remained untracked for legal purposes.

16. Lt Col Hoffler realized that Col Melville had won the war against him, and that the promotion board would see the LOR in his file. His career was well and truly over, and Lt Col Hoffler knew there was no point in withdrawing his retirement papers. Due to Col Melville's race-based targeting of Lt Col Hoffler, Lt Col Hoffler's time in the Air Force was over. He officially retired in September 1984.

17. One month prior to his constructively forced early retirement, Lt Col Hoffler made an Equal Opportunity Treatment ("EOT") complaint to the Air Force. The Air Force Academy conducted an investigation into Lt Col Hoffler's allegation that he was targeted because of his race. The conclusions from that investigation were that Col Melville's investigation was conducted in an unprofessional manner, and that Col Melville's LOR against Lt Col Hoffler was "unequal" and based on incomplete information. However, the Air Force concluded that nothing in Col Melville's investigation into Lt Col Hoffler was based on race. Adding insult to injury, in 1985, the Air Force revoked the now-retired Lt Col Hoffler's Meritorious Service Medal ("MSM").

18. Lt Col Hoffler knew that he had been wronged. In 1987, he timely appealed the revocation of his MSM to the AFBCMR. That appeal was denied.

19. In June of 2008, Lt Col Hoffler petitioned the AFBCMR to remove the LOR, promote him to Colonel, and reinstate his MSM. That appeal was denied. Lt Col Hoffler timely appealed that denial, *pro se*, to the U.S. District Court for the Eastern District of North Carolina. The U.S. Air Force prevailed in the matter on summary judgment.

20. Unfortunately, it was not until years later, when the Air Force began taking a harder look at racism in its ranks, that Lt Col Hoffler began to feel he had any chance of success.

21. According to a Government Accountability Office report, military-wide, black servicemembers were twice as likely to be investigated than others, with the U.S. Air Force being worse in this regard than other branches of the military. A 2017 report by Protect Our Defenders concluded that the Air Force has the highest racial disparities of any military branch for discipline. The Air Force's own Inspector General's Independent Racial Disparity Review ("IRDR") confirmed in December 2020 that racial disparity exists for black service members in, among other things, military justice, administrative separations, placement into occupational career fields, certain promotion rates, professional military educational development, and leadership opportunities.

22. In a subsequent IRDR in September 2021, the Air Force's Inspector General found that Black Airmen were subjected to criminal investigations 64% more than the average rate.[1] The same IRDR findings noted that because commanders were afforded unchecked

---

[1] The Inspector General Department of the Air Force, "Report of Inquiry (S8918P) Disparity Review," September 2021, available at https://www.af.mil/Portals/1/documents/2021SAF/09_Sept/DR_ROI_Baseline.pdf (last visited Aug. 17, 2022).

discretion in issuing administrative discipline—such as LORs, the most severe form of administrative discipline—the "[d]ifferences in the severity and frequency of punishment for similar offenses raise questions and instill doubt as to why Airman and Guardians receive dissimilar treatment." For this reason, in 2021, Commanders were finally required to track the rank, age, gender, race and ethnicity of both parties (the one issuing the discipline, and the one being disciplined) to their installation legal office.

23. These recently released reports instilled in Lt Col Hoffler the courage to renew his path to justice and seek reconsideration of his petition by the AFBCMR. In June 2017, and again in January 2021, Lt Col Hoffler requested the AFBCMR reconsider its 2008 denial of his petition. The January 2021 request referenced the Protect Our Defenders report and included new and material evidence of racial bias in Col Melville's investigation. Specifically, Lt Col Hoffler included two new key pieces of evidence that directly corroborated his assertions that Col Melville racially targeted him: first, he included an article from the New York Times regarding the historic racism in the Church of Jesus Christ of Latter-day Saints—the same church in which Col Melville was an Elder; and second, an affidavit from a Retired Senior Master Sergeant who served under Lt Col Hoffler's command at the Air Force Academy and also attended the same church as Col Melville. This Senior Master Sergeant explicitly heard Col Melville say during a church meeting that as long as he was at the Air Force Academy, Lt Col Hoffler would not be promoted.

24. That request was denied on February 17, 2022. The authority listed in the denial was the December 2020 IRDR Report of Investigation (ROI), of which the AFBCMR noted:

> The IRDR confirmed racial disparity exists for Black service members in law enforcement apprehensions, criminal investigations, military justice, administrative separations, placement into occupational career fields, certain promotion rates,

> professional military educational development and leadership opportunities. *While the data shows racial disparity, it did not indicate causality*. Unlike Articles 15 and courts-martials, there is no requirement for supervisors, first sergeants or commanders to consult with the base legal office on administrative disciplinary actions. *There is no tracking of whether supervisors and commanders issue LORs, Letters of Admonishment, and Letters of Counseling in a similar manner, magnitude and frequency to enlisted members, regardless of race, gender or ethnicity*.

Second Addendum to Record of Proceedings, at 2 (emphasis added). Of course, the AFBCMR failed to include the entire finding:

> Outside of non-judicial punishment and courts-martial under the UCMJ, service members may also receive administrative disciplinary action to correct and punish bad behavior. Administrative disciplinary actions consist of Letters of Reprimand, Letters of Admonishment, and Letters of Counseling (LORs, LOAs, LOCs), *with the LOR being the most severe rebuke* and the LOC the least. *The DAF has not historically tracked racial demographics in administrative disciplinary actions. However, a review of administrative separation actions shows there is racial disparity in the percentage of black enlisted members in the rank of E1 to E4 whom the DAF involuntarily discharges with misconduct as a basis, which is generally and largely based upon a record of LORs, LOAs, and LOCs. Thus, young black service members as a whole may be receiving more administrative disciplinary actions than their peers, based on the frequency with which they are being administratively discharged for misconduct*.

December 2020 IRDR ROI, at 16 (emphasis added).

25. The ROI also stated that the "service relies on the judgment and training of supervisors and commanders on these matters[,]" and for this reason, the Air Force, in past several years, has implemented racial bias training for commanders, and in 2021 planned to incorporate a "computerized tracking of administrative disciplinary actions[,]" which will "require commanders to report the type of administrative action, rank, age, gender, race, and ethnicity of the person issuing the paperwork, along with the same information for the recipient of the disciplinary action." *Id.* at 16-17. The AFBCMR did not cite the IRDR ROI from

8

September 2021, which followed up on further racial and gender disparities. That ROI, at page 38, noted that "differences in the severity and frequency of punishment for similar offenses raise questions and instill doubt as to why Airman and Guardians receive dissimilar treatment."

26. Ultimately, the AFBMR, after considering the fact the December 2020 IRDR "confirmed racial disparity exists for Black service members," held that Lt Col Hoffler did not establish that the issuance of the LOR was due to his race. See Second Addendum to Record of Proceedings, at 2.

27. This Complaint follows. Claims under the APA must be filed within six years of the agency action. 28 U.S.C. § 2401. As the agency action was final on February 17, 2022, this Complaint is timely filed.

## STATEMENT OF CLAIM

### CAUSE OF ACTION:
### VIOLATION OF APA

**THE AFBCMR DECISION WAS ARBITRARY, CAPRICIOUS, AND UNSUPPORTED BY EVIDENCE BECAUSE IT FAILED TO CONSIDER THE SEPTEMBER 2021 IRDR FINDINGS AND FAILED TO CONSIDER OR ANLAYZE LT COL HOFFLER'S NEW AND MATERIAL EVIDENCE SHOWING TARGETED RACIAL DISCRIMINATION**

27. Plaintiff incorporates by reference herein paragraphs 1-27 of this Complaint.

28. The AFBCMR's determination that there was insufficient new evidence to suggest that the LOR targeted at Plaintiff was a result of racial discrimination was arbitrary, capricious, and unsupported by evidence. A Board's decision is arbitrary, capricious, and unsupported by evidence if it fails to consider an important aspect of the problem, fails to consider all competent evidence before it, and fails to correct a blatant injustice.

29. Plaintiff included two key pieces of new evidence with his January 2021 submission: the New York Times article and the Senior Master Sergeant's affidavit.

28. In rendering its decision, the AFBCMR recognized, referenced, and relied upon the December 2020 IRDR's finding and confirmation of racism for Black service members in the Air Force. It also noted that LORs are left to the discretion of commanders, and the Air Force has not historically tracked whether these were issued with a bias toward racism.

29. Despite relying on the December 2020 IRDR findings, the AFBCMR failed to recognize the September 2021 IRDR findings, which specifically noted that discrepancies in how and when administrative discipline—including LORs—are issued "raise questions and instill doubt as to why Airman and Guardians receive dissimilar treatment."

30. Lt Col Hoffler was one of the few black Air Force officers at the Air Force Academy during this time. He was also under the command of Col Melville—an individual who exhibited overt racism. Col Melville knew Lt Col Hoffler was pending review for promotion to Colonel. Col Melville was overheard saying he would do whatever he could to ensure that Lt Col Hoffler was never promoted. Col Melville knew that an LOR—the most severe form of administrative discipline—would have a detrimental effect on Lt Col Hoffler's chances for promotion. Col Melville was provided unfettered discretion in issuing the LOR, even when it was subsequently determined it lacked supporting evidence, and the underlying investigation was poorly conducted. This evidence both directly and circumstantially shows that Col Melville engaged in targeted racial discrimination against Lt Col Hoffler. Indeed, the fact Lt Col Hoffler was issued an LOR as opposed to other forms of military justice (which would have provided him significantly more due process protection) casts significant "doubt" as to whether the discipline was fair in the first place. And yet, the AFBCMR, without any analysis of the affidavits regarding Col Melville's overt racism or recognition of the second IRDR, summarily

stated that Lt Col Hoffler failed to provide any evidence of racism being a factor for the LOR, his untimely separation from the Air Force, and revocation of his MSM.

    31.    The AFBCMR's failure to: (1) address and analyze all evidence before it; (2) consider the fact that although the LORs are not tracked, the manner in which they are issued can raise questions and doubt as to their fairness; and (3) recognize that it is almost always impossible to provide direct evidence of racism, which is why circumstantial evidence is crucial in such cases, renders its decision arbitrary, capricious, and unsupported by evidence.

    32.    Accordingly, this Court should hold the AFBCMR's decision denying Plaintiff's AFBCMR appeal arbitrary, capricious, and unsupported by evidence.

## REQUEST FOR RELIEF

Wherefore, Plaintiff, by and through counsel, respectfully requests that this Court: (1) hold that Defendant, through the AFBCMR, acted in a manner arbitrary, capricious, and unsupported by evidence by denying Plaintiff's AFBCMR request for reconsideration because Plaintiff did provide relevant and material evidence of racism; (2) hold that Defendant, through the AFBCMR, acted in a manner arbitrary, capricious, and unsupported by evidence by failing to consider the September 2021 IRDR findings that the unchecked discretion of commanders in administering administrative discipline raises questions and casts doubt on the fairness of said discipline; (3) remand and order the AFBCMR to conduct a more thorough review of Lt Col Hoffler's matter in accordance with this evidence; (4) award Plaintiff reasonable costs and attorney fees incurred in this civil action pursuant to 28 U.S.C. § 2412; and (5) grant Plaintiff such other relief as the Court deems just and proper.

Dated: September 12, 2022                    Respectfully submitted,

*[signature: Carol Thompson]*

Carol A. Thompson
D.C. Bar No. 1658143
*Partner*
FEDERAL PRACTICE GROUP
1750 K Street Northwest, Suite 900
Washington, DC 20006-2317
Telephone: (202) 862-4360
Facsimile: (888) 899-6053
cthompson@fedpractice.com

*Counsel for Plaintiff*